**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| AMY BURNETTI | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-02252 |
| | ) | |
| | ) | Hon. Judge John J. Tharp, Jr. |
| v. | ) | |
| | ) | |
| BOARD OF EDUCATION FOR TOWNSHIP HIGH SCHOOL DISTRICT 113, | ) ) ) | |
| | ) | |
| | ) | |
| And | ) | |
| | ) | |
| Deborah Finn, Elizabeth Garlovsky, Ben Martindale, Linda Yonke, Debbie Hymen (all in their individual capacities) | ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff Amy Burnetti ("Burnetti") hereby submits her response to Defendants' Board of Education for Township High School District 113 ("District"), Deborah Finn ("Finn"), Elizabeth Garlovsky ("Garlovsky"), Ben Martindale ("Martindale"), Linda Yonke ("Yonke") and Debbie Hymen ("Hymen"), collectively "the Defendants," 12(b)(6) PARTIAL Motion to Dismiss Plaintiff's Complaint. Plaintiff respectfully requests that this Court DENY Defendants' motion and ORDER Defendants to answer Plaintiff's Complaint.

## Background

Plaintiff Burnetti has been employed by Defendant at Highland Park High School ("HPHS") since 2009. Throughout her tenure Burnetti has served as a Teacher, Department Chair,

1

and Assistant Principal. Compl. at ¶ 14. Burnetti's performance in all of these roles has been exemplary. *See* Compl. at ¶¶ 18, 20, 23, 85, 89.

Following the 2016-2017 school year, the administration ("previous administration") at HPHS submitted their resignations. Compl. at ¶ 25. Burnetti was offered the position of Assistant Principal as a result of these resignations and became a part of the new HPHS administration ("new administration"). Compl. at ¶ 26. In this role, Burnetti was part of a team that uncovered and reported multiple instances of misconduct by the previous administration. Specifically, Burnetti cooperated in an investigation into misconduct by the previous administration and in the State's Attorney's external investigation of the previous administration's destruction of more than 10,000 documents and physical property. Compl. at ¶¶ 31-32. Additionally, the new administration, including Burnetti, reversed the previous administration's illegal policy of allowing a sex-offender on campus. Because of the actions of Burnetti and the new administration, Defendants sought retribution. The District and the individual Defendants schemed to remove the new administration– including Burnetti– by ruining reputations and improperly demoting and reassigning them.

On April 27, 2021, Burnetti filed a six-count Complaint against Defendants for violations of the First Amendment of the United States Constitution, 42 U.S.C. § 1983; Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983; Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("the FLSA"); Illinois Wage Payment and Collection Act, 820 ILCS §§ 115/1 *et seq.* ("the IWPCA"), and the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* On July 12, 2021, Defendants filed a partial motion to dismiss Plaintiff's Complaint. Specially, Defendants seek to dismiss: (1) Counts I and II against all Defendants relating to Burnetti's 2018 Demotion; (2) Counts I and II against Defendant District 113; (3) Counts I and II against Defendants Yonke, Martindale, Hymen, and Garlovsky; (4) Count IV against individual Defendants; (5) Counts VI

against all Defendants; and (6) all equitable relief against Defendants Garlovsky, Hymen, Martindale, and Yonke. Plaintiff submits her response to that motion herein.

## Argument

To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving the defendant fair notice of the claims. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Dismissal under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). When presented with a motion to dismiss, a court construes pleadings liberally, and mere vagueness or lack of detail does not constitute a sufficient ground for dismissal. *Strauss*, 760 F.2d at 767. Nonetheless, a complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Papapetropoulous v. Milwaukee Transp. Services,* 795 F.2d 591, 594 (7th Cir. 1986). In deciding a motion to dismiss, factual allegations of the complaint, as well as any reasonable inferences drawn from them, are taken as true. *Neumann v. John Hancock Mut. Life Ins.,* 736 F. Supp. 182, 183 (N.D. Ill. 1990).

A. **Plaintiff's Section 1983 Claims in Counts I and II Relating to her 2018 Demotion from Assistant Principal are Timely.**

Defendants seek to dismiss all claims related to Plaintiff's 2018 demotion. There is a two-year statute of limitations for personal injury actions in Illinois. 725 ILCS 5/13-202. The accrual of such a claim is governed by federal law and Section 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). In determining the date of accrual, the Seventh Circuit has set forth a two-step analysis: (1) the court must first identify the injury; (2) the court must then

3

identify the date on which the plaintiff could have sued for that injury, which is determined by the date that plaintiff knew or should have known that her rights were violated. *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004); *Libri v. Quinn*, No. 06-3167, 2010 WL 2836802 at *11 (C.D. Ill. Jul. 15, 2010). This is a fact-intensive inquiry, in which both the surrounding circumstances and the claims plaintiff herself is trying to raise are critical. *Hileman*, 367 F.3d at 697.

A statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). Dismissing a claim as untimely at the pleading stage is an "unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). "[A] federal complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Bond v. City of Chicago*, 2017 WL 698680 at *3 (N.D. Ill. Feb. 22, 2017) (citing *Hollander v. Brown*, 457 F.3d 688, 691 n. 1 (7th Cir. 2006)).

In their partial motion to dismiss, Defendants argue that Plaintiff's demotion in July 2018 is outside the two-year statute of limitation and should therefore be dismissed. Not so. Even if the injury is determined to have occurred in July 2018 and the first prong of the test is satisfied, Burnetti could not reasonably bring suit for this injury until much later. The second prong of the test, the date on which the plaintiff could have sued for that injury, falls within the two-year statute of limitations.

The Complaint alleges that: "When Plaintiff asked for an explanation for her being demoted, she was told that the Interim Superintendents had "heard" that Plaintiff was not a good Assistant Principal." Compl. at ¶ 64. Defendant Yonke also explained the demotion by telling Plaintiff that any new Principal (such as Finn) must be able to select her own Assistant Principal. Compl. at ¶ 68. These explanations are not legally operable reasons to bring a § 1983 claim.

4

Therefore, the date of demotion is not the date where this became legally actionable because it is not reasonable for Burnetti to have known or should have known that her rights were violated. No other explanation or notice regarding the reason for the demotion was provided. Compl. at ¶ 67. Only after subsequent events could Plaintiff have realized that her 2018 demotion was part of a scheme to retaliate against her for actions in reporting the previous administration's misconduct.

Burnetti could not have known that the 2018 demotion was tied to her constitutional rights until she later learned that (1) District 113, Garlovsky and Hymen sought to oust the entire "new administration" by encouraging families and teachers to complain; and (2) that the motivation to oust them was because District 113, Garlovsky, Hymen and Finn were opposed to the State's Attorney's criminal investigation. The earliest Burnetti could have learned about Defendants' opposition to the criminal investigation is sometime *after* attorney for Defendants sent a letter to the State's Attorney asking the investigation to be dropped on March 22, 2019. *See* Compl. at ¶ 78. The reasonable inference to be drawn from this is Burnetti did not receive notice of the State's Attorney's decision regarding this letter until well after April 27, 2019.

In addition, Burnetti did not have knowledge, nor should she have had knowledge that her initial demotion was a violation of her constitutional rights until her second demotion without cause, this one directly by Principal Finn in December 2019. Compl. at ¶ 86. At the time of the December 2019 demotion, it became clear that Defendants intended to ban Plaintiff from any administrative position within District 113. Where with the 2018 demotion, there was no pay cut (or so Plaintiff was told) and there was no record or notice of poor performance, the December 2019 demotion was accompanied with a pay cut and public notice of poor performance. Compl. at ¶¶ 92-99. Thus, it was at this time that Plaintiff knew or should have known the 2018 demotion was retaliation for her protected activities.

Here, the Plaintiff's Complaint has alleged sufficient facts to survive a motion to dismiss the claims related to the 2018 demotion. At the motion to dismiss stage, this Complaint does not need to plead facts to overcome a statute of limitations affirmative defense. *Bond*, 2017 WL 698680 at *3. Rather, all Plaintiff must do is demonstrate that a perceivable set of facts exist within this timeframe. Plaintiff's Complaint has met this burden.

**B. Plaintiff Properly Alleges against Defendant District 113 that her Rights were Violated By a Final Policymaking Authority and as Part of Policy or Practice.**

To state a claim under Section 1983, a plaintiff must show she suffered constitutional injury as a result of: (1) the enforcement of an express policy, (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *See Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001). In this case, Plaintiff sufficiently alleges that she suffered a constitutional injury as a result of the District 113's final policymaking authority. Additionally, the Complaint sufficiently alleges that Plaintiff suffered constitutional injury as a result of the District's blind enforcement of the individual Defendants' retaliation against the new administration.

1. **Final Policy**

In Illinois, the School District's Board of Education has full power to manage the schools and to adopt all rules and regulations needed for that broad's purpose. *Duda v. Bd. of Educ. of Franklin Park Sch. Dist.*, 133 F.3d 1054, 1061 (7th Cir. 1998). Section 10-20.5 of the School Code grants a District's Board of Education the power "to adopt and enforce all necessary rules for the management and government of the public schools of their district." 105 ILCS 5/10-20.5. Additionally, the District's Board of Education is specifically charged with "appoint[ing] teachers and fix[ing] salaries." 105 ILCS 5/10-20.7. *See e.g. Roberts v. Board of Education*, 25 F. Supp. 2d 866 (N.D. Ill 1998) (where a Board of Education is a proper defendant in a § 1983 claim).

6

The Complaint alleges that Defendants–including District 113–retaliated against Burnetti by demoting her on two separate occasions and taking action that prevents her from obtaining an administrative level position in the future. *See* Compl. at ¶ 103. The Complaint additionally alleges that Defendants– including District 113– deprived Burnetti of due process in violation of the Fourteenth Amendment. *See* Compl. at ¶ 109. The Complaint further alleges that District 113 is a municipality charged with setting policy for Township High School District 113. Compl. at ¶ 6. It is clear from the context, and the fact that the Board is responsible for approving both her demotions, that the District's Board of Education is a proper defendant for Counts I and II.

### 2. Custom of Policy

A constitutional injury caused by a municipality may be "shown directly by demonstrating that the policy itself is unconstitutional. More specific for this case, municipal liability can also be demonstrated indirectly 'by showing a series of bad acts and inviting the court to infer from them that the policy making level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting the misconduct of subordinate officers.'" *Woodward v. Corr. Med. Servs. Of Ill. Inc.* 368 F.3d 917, 927 (7th Cir. 2004) (citing *Estate of Novack* ex rel. *v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000)). "Local governments... may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's decision making channels." *Petit v. City of Chicago* 766 F. Supp. 607, 614 (N.D. Ill 1991) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)). A "custom" will be attributed to a government body when the duration and frequency of a practice warrants a finding of either actual or constructive knowledge by the governing body that the practice has become customary among employees. *Petit*, 766 F. Supp. at 614.

Assuming *arguendo* the District did not act as a final policymaker, Burnetti sufficiently alleged there was a widespread practice by District 113 of approving retaliatory actions of employees who reported misconduct, including criminal conduct, of HPHS's previous administration. This practice is shown by the termination of Superintendent Dignam in Spring of 2018 as well as forcing HPHS Principal Elizabeth Robertson to resign her principal position. Compl. at ¶ 58. Garlovsky and Hymen met with teachers and community members to encourage them to file complaints. Compl. at ¶¶ 55-56. The District and individual Board Members approved a demotion that was without proper notice and in violation of the School Code. After the previous administration resigned at the end of the 2016-2017 school year, it took Defendants just over a year to enforce their policy of removing all administrators who disagreed with them on the issue of the State's Attorney investigation of the previous administration as well as the illegal sex offender policy on campus. Defendants were efficient in practicing this policy; however, the Court should not interpret efficiency to be a lack of an established custom. The District had sufficient knowledge of all these administrative changes, because the District must approve these changes, and failed to correct the misconduct.

The Complaint has sufficiently alleged that the District violated Burnetti's constitutional rights both as a final policymaker and through failing to stop the scheme of the individual Defendants even though their misconduct was clearly evident.

**C. Plaintiff Properly Alleges that Defendants Yonke, Martindale, Hymen, and Garlovsky were Personally Involved in the Alleged Violations of her Rights.**

The individual Defendants were acting under color of law and were *personally involved in and responsible for* the violations of Burnetti's rights. The individual Defendants are correct that, in the context of a Rule 12(b)(6) motion, a plaintiff alleging a § 1983 claim for a constitutional violation must allege enough facts to show that the defendant was personally involved in the

8

constitutional deprivation in question. *See Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993) ("a valid § 1983 claim for damages against a state supervisory official in his individual capacity requires a showing of direct responsibility for the improper action. In other words, an individual cannot be held liable in a § 1983 action unless he *caused or participated in* an alleged constitutional deprivation."); *Gnutek v. Illinois Gaming Bd.*, No. 17 C 808, 2017 WL 2672296, at *3 (N.D. Ill. June 21, 2017). A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

   **1. Yonke and Martindale**

Yonke and Martindale caused and participated in the constitutional deprivation of Burnetti's First and Fourteenth Amendment rights. Burnetti was retaliated against for expressing her First Amendment rights in the external investigation of the previous administration. Yonke and Martindale participated in the District's scheme to have the State's Attorney's investigation shut down by demoting Burnetti and punishing her for her participation in the investigation. Compl. at ¶¶ 61-65.

Regarding Burnetti's due process rights under the Fourteenth Amendment, the Complaint alleges that Yonke and Martindale participated in the constitutional deprivation by demoting Burnetti without proper notice or the opportunity to be heard. Compl. at ¶ 61. Yonke and Martindale caused Burnetti to be demoted without any supporting reason and without following the proper procedure. Compl. at ¶¶ 64-67.

### 2. Hymen and Garlovsky

Hymen and Garlovsky caused and participated in the constitutional deprivation of Burnetti's First and Fourteenth Amendment rights. The Complaint alleges that Hymen and Garlovsky opposed the external investigation of the previous administration because of their personal relationships. Compl. at ¶¶ 37-38. Hymen and Garlovsky participated in the deprivation of Burnetti's First and Fourteenth Amendment rights by holding meetings with teachers and/or community members to encourage them to raise complaints about the new HPHS administration– which includes Burnetti. Compl. at ¶ 55. Hymen and Garlovsky instructed individuals to file large numbers of complaints against the administration. Compl. at ¶ 56.

Additionally, the Complaint alleges that Hymen and Garlovsky were personally involved in depriving Burnetti due process. As Board members, Hymen and Garlovsky are charged with approving administration changes. In conjunction with the actions Hymen and Garlovsky took to facilitate the removal of Burnetti and the rest of the new administration, Hymen and Garlovsky also turned a blind eye to the procedural problems in removing Burnetti in the manner they did– which resulted in a violation of Burnetti's due process rights.

The Complaint sufficiently alleges that Yonke, Martindale, Hymen and Garlovsky were also personally involved in and responsible for violating Burnetti's constitutional rights.

### D. Plaintiff Properly Alleges Individual Defendants' Involvement in FLSA Retaliation.

The FLSA makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3); *Sloan v. American Brain Tumor Association, No.* 901 F. 3d 891, 894 (7th Cir. 2018). The purpose of statutory anti-retaliation provisions is to prevent employers from intimidating employees and discouraging them

from enforcing their legal rights *Beltran v. Brentwood North Healthcare Center, LLC*, 426 F. Supp. 2d 827, 833 (N.D. Ill. 2006) (citing *Harmar v. United Airlines, Inc.*, No. 95 C 7665, 1996 WL 199734, at *1 (N.D. Ill. App. 23, 1996)). To state a retaliation claim under this provision, a plaintiff must plausibly allege that she engaged in an activity protected under the FLSA, Defendants took an adverse employment action against her, and a causal link exists between the two. *Sloan*, 901 F. 3d 894 (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012)). In other words, Plaintiff must show "that he engaged in a protected activity and as a result suffered the adverse employment action of which he complains" through the use of direct and/or circumstantial evidence. *Kasten*, 703 F. 3d at 972. Direct evidence is evidence, which "if believed by the finder of fact, 'will prove the particular fact in question without reliance upon inference or presumption'" *Id.* (citing *Volovsek v. Wis. Dep't of Agric., Trade and Consumer Prot.*, 344 F.3d 680, 689 (7th Cir.2003) (internal citation omitted)). Circumstantial evidence, which allows a jury to infer retaliation, may include: (1) suspicious timing, ambiguous statements or behaviors; (2) evidence that similarly situated employees were treated differently; or (3) a pretextual reason for adverse employment action. *Kasten*, 703 F.3d at 972 (citing *Volovsek*, 344 F.3d at 689–90). "Pretext can be shown by identifying weakness, implausibilities, inconsistencies, or contradictions in an employer's asserted reason for taking an adverse employment action such that a reasonable person could find it unworthy of credence. *Garcia v. Draw Enterprises III, LLC*, 2018 WL 6045206 at *9 (N.D. Ill. Nov. 19 2018) (citing *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 487 (7th Cir. 2015). The presence of "shifting explanations" that are "sufficiently inconsistent or otherwise suspect" suggest pretext. *Garcia*, 2018 WL 6045206 at *9 (citing *Hitchcok v. Angel Corps, Inc.*, 718 F.3d 733, 738 (7th Cir. 2013)).

Sufficient circumstantial evidence is alleged to survive the motion to dismiss stage for Defendants Hymen, Garlovsky, and Finn. The Complaint alleges that Hymen and Garlovsky are Board Members of District 113 and charged with setting policy for Township High School District 113. Compl. at ¶¶ 8-9. As such, they are charged with final approval of payments to teachers. First, the Complaint alleges that the new Superintendent agreed Burnetti would be paid for the 28 days she worked without compensation. Compl. at ¶ 73. Then, the Complaint directly alleges that the District sent Plaintiff a Settlement and Release agreement that required her to release any and all claims related to her demotion from Assistant Principal to Department Chair, and any other claims, in order to be paid the owed wages. Compl. at ¶ 75. In other words, after Plaintiff complained about the failure to pay her owed wages, Defendants including Hymen and Garlovsky agreed to pay the wages *only* if Plaintiff gave up her rights to sue for other violations. When Plaintiff refused to forgo her rights to challenge the legality of Defendants' other actions, the Defendants, including Hymen and Garlovsky, refused to pay Plaintiff the owed wages. Thus, the Complaint alleges that Hymen and Garlovsky exercised control over Burnetti by withholding approval on her wages in order to escape additional liability for their earlier wrong doing. Withholding Burnetti's wages in violation of the FLSA was another individual action to retaliate against Burnetti for her involvement in reporting the misconduct of the previous administration.

Plaintiff sufficiently alleged circumstantial evidence to show that Defendant Finn exercised sufficient control and authority over Plaintiff so as to be liable for FLSA retaliation. Specifically, after Plaintiff complained of failure to pay owed wages, and then refused to sign a settlement agreement forgoing her rights to sue on the basis of other misconduct, Defendant Finn demoted Plaintiff in December of 2019. Specifically, the Complaint alleges that in September of 2019 the new Superintendent agreed to pay Plaintiff the owed wages; in November of 2019 the District sent

12

Plaintiff a settlement agreement that she refused to sign; and in December of 2019 Defendant Finn informed Plaintiff that she was again being demoted. Compl. at ¶¶ 73, 75, and 86. The reason Finn provided Plaintiff for her demotion was because Plaintiff had been "inappropriate" at an administration meeting. Compl. at ¶ 87. However, at that very same meeting Finn offered to provide Plaintiff with a "glowing" letter of recommendation. Compl. at ¶ 88.

At this point the Court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the plaintiff. *Wittenberg v. Wheels*, 963 F. Supp. 654, 657 (N.D. Ill. 1997) (citing *Antonelli v. Sheahan*, 81 F.3ds 1422, 1427 (7th Cir. 1996)). Therefore, Plaintiff has sufficiently stated a FLSA claim because there is a plausible set of facts- derived from the circumstantial evidence laid out in the Complaint, against Defendants Hymen, Garlovsky, and Finn- showing that Burnetti was retaliated against by these individuals.

E.  **Plaintiff Seeks Equitable Relief under the IWA.**

The Illinois Whistleblower Act bars the recovery of damages for claims brought outside the one-year statute of limitations. *Padilla v. County of Cook*, 100 F. Supp. 2d 1145, 1146-47 (N.D. Ill. 2000). However, this limitation does not apply to Plaintiff's claim for equitable relief– including reinstatement, back pay, front pay, and injunctive relief. *Williams v. Office of the Chief Judge of Cook County,* No 13 C1116 N.D. Ill. May 21, 2015 (citing *Kirley v. Board of Education of Maine Twp. High School Dist. 207*, N. 13 C 1706, 2013 WL 6730885 at *12). *See Spratt v. Bellwood*, 380 F.Supp.3d 783, 788 (N.D. Ill. 2019) (back pay is relief separate from damages); *see also*, *Pals v. Schepel Buick GMC Truck Inc.*, 220 F. 3d 495, 500 (7th Cir. 2000) ("Back pay and front pay are equitable remedies...and therefore matters for the judge...").

Plaintiff seeks to pursue this claim as it relates to equitable relief.

F.  **Equitable Relief Against Garlovsky, Hymen, Martindale and Yonke Not Sought.**

As a final point, Plaintiff has no need to seek equitable relief against the four individual Defendants who are no longer affiliated with the District.

## Conclusion

For the foregoing reasons, Plaintiff respectfully asks this Court to DENY Defendants' motion to dismiss. In the alternative, Plaintiff seeks leave to amend the Complaint.

Dated: August 16, 2021  /s/ Noelle C. Brennan
One of Plaintiff's Attorneys

Noelle Brennan
nbrennan@nbrennan-associates.com
Amanda Burns
aburns@nbrennan-associates.com
NOELLE BRENNAN &
ASSOCIATES, LTD.
20 S. Clark St., Suite 1530
Chicago, IL 60603
(312) 422-0001 (tel.)
(312) 422-0008 (fax)

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that on August 16, 2021, I filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' 12(b)(6) PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court using the CM/ECF system which will provide notification of such filing to the e-mail addresses of all counsel of record.

                                      RESPECTFULLY SUBMITTED,

                                      /s/Noelle Brennan
                                      One of Plaintiff's Attorneys