IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMY BURNETTI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 21 cv 2252 |
| BOARD OF EDUCATION FOR TOWNSHIP HIGH SCHOOL DISTRICT 113, DEBORAH FINN, ELIZABETH GARLOVSKY, BEN MARTINDALE, LINDA YONKE, and DEBBIE HYMEN, | ) ) Judge John J. Tharp, Jr. ) ) ) ) ) ) |
| Defendants. | ) ) |

**ORDER**

For the reasons set forth in the Order and Statement below, Defendants' partial motion to dismiss [10] is granted in part and denied in part. Plaintiff is granted leave to amend her complaint, consistent with this opinion, by June 2, 2023.

**STATEMENT**

Amy Burnetti sues her employer, the Board of Education for Township High School District 113 ("the Board"), as well as two individual Board members, a former Principal, and two former Interim Superintendents working for the Board. She alleges that the defendants retaliated against her for actions she took as an assistant principal under a previous school administration, withheld her wages, and retaliated against her again when she requested payment of those wages. According to Burnetti's complaint, those retaliatory efforts culminated in two demotions without affording her the process she was due under Illinois law.

Burnetti's own allegations show that she brought her claims relating to her first demotion —which occurred back in 2018—too late. The Court therefore dismisses those claims with prejudice. As for the second demotion a year later, Burnetti has alleged facts sufficient to raise an inference that the Board, but not the individual defendants, caused her injury. Accordingly, the Court denies the Board's motion to dismiss the claims relating to her 2019 demotion and grants the individual defendants' motion to dismiss without prejudice. Finally, Burnetti does not plausibly allege that any individual defendants retaliated against her for seeking wages that she believed she was owed. The Court therefore grants the defendants' motion to dismiss those claims without prejudice.

I. **Background**

Burnetti has worked at Highland Park High School since 2009. She started as a business education teacher before she was promoted to Department Chair of Applied Arts and Fine Arts in 2013. As a teacher and a department chair, Burnetti received positive performance evaluations.

At the end of the 2016 school year, the principal and two assistant principals of Highland Park High School resigned. That year, the Board hired a new superintendent, Chris Dignam, to serve a three-year term. To replace one of the outgoing administrators, Burnetti was offered another promotion to Assistant Principal. Burnetti accepted the position and served as Assistant Principal during the 2017-2018 school year.

During her tenure, Burnetti participated in an investigation of the outgoing administration's alleged misconduct. In June 2017, Dignam's administration—which included Burnetti—discovered that members of the outgoing administration had destroyed thousands of school records. These records included confidential student materials, such as psychological assessments and financial statements. The new administration reported this mass destruction of records (the motivation for which the Complaint does not explain) to the Board and retained a law firm to investigate. Eventually, the law firm referred the matter to the Lake County State's Attorney's office for criminal investigation. As part of the investigation, the State's Attorney's office interviewed Burnetti.

Around the same time, during the 2017-2018 school year, Dignam's administration discovered that the prior administration had allowed a sex offender on the Highland Park High School campus in violation of Illinois law. Dignam forbade the offender, who was the father of a Highland Park High School student, from returning to campus. Burnetti was tasked with explaining the offender's expulsion to the student's mother.

According to Burnetti, some Board members contested the new administration's actions. Defendants Elizabeth Garlovsky and Debbie Hymen, both of whom served on the Board at the time, opposed both the investigation of the destroyed documents and the expulsion of the sex-offender parent from campus. Regarding the document destruction investigation, Burnetti alleges that Garlovsky's and Hymen's personal relationships with the outgoing administration motivated their opposition. Burnetti also alleges that several parents contacted the Board to complain about the decision to bar the sex-offender parent from campus. Some of the Board members were friends with those complaining parents, who contacted Burnetti and the Board's outside counsel to attempt to reverse the expulsion decision. Garlovsky and Hymen participated in those efforts. Despite this pressure, Dignam's administration stood by its previous decisions.

Displeased with this outcome, Board members—including Garlovsky and Hymen—met with teachers and parents to encourage them to complain about the new administration. These efforts allegedly bore fruit; in the spring of 2018, the Board fired Dignam and reassigned the then-current principal of Highland Park High School to a different position. To replace Dignam, the Board hired two Interim Superintendents: Defendants Linda Yonke and Ben Martindale.

That spring, the Board also offered to renew Burnetti's Assistant Principal position for the 2018-2019 school year. Burnetti accepted and signed the contract on July 1, 2018. Meanwhile, the Board hired Defendant Deborah Finn as Interim Principal, a position that later became permanent.

On July 19, 2018, Yonke and Martindale told Burnetti that she was being reassigned to her former position as the Department Chair of Applied Arts and Fine Arts. To explain the demotion, the Interim Superintendents relayed rumors that Burnetti was not performing well in her role as Assistant Principal. About a month later, Yonke implied to Burnetti that she was demoted because a new principal should be able to select a new assistant principal. Burnetti alleges that she never received any written notice, or statement, of facts explaining her reclassification, as required by Illinois statute 105 ILCS 5/10-23.8b.

Burnetti alleges that Finn influenced the interim superintendents to demote her. Like Garlovsky and Hymen, Finn allegedly maintained close ties to the maligned outgoing administration. Burnetti asserts that Finn caused her demotion in response to her involvement in the State's Attorney's investigation.

While Burnetti assumed her former Department Chair position during the 2018-2019 school year, the new administration sought to reverse the decisions of Dignam's administration. In March 2019, the Board requested that the State's Attorney drop the destroyed documents investigation. The new administration, led by Principal Finn, also allowed the child sex-offender parent to return to campus.

At the time of her 2018 demotion, Burnetti was still performing the duties of an assistant principal. Burnetti alleges that when the Board demoted her, it neglected to pay her for twenty-eight days of administrative work associated with that role. On several occasions, Burnetti complained about her withheld pay. By September 2019, a new superintendent, Bruce Law, replaced the Interim Superintendents. Law assured Burnetti that she would be compensated for the days that she was not paid. In November 2019, however, the Board sent Burnetti a settlement and release agreement, which required her to release any legal claims she had against the Board in exchange for the withheld wages. Burnetti refused to sign the release.

In December 2019, about a year-and-a-half after Burnetti had resumed her position as a Department Chair, Finn informed Burnetti that she was being reassigned again, this time to a teaching position for the 2020-2021 school year. Finn cited "inappropriate" behavior by Burnetti at an administration meeting as the reason for the demotion. Compl. ¶ 87, ECF No. 1. Nevertheless, Finn offered to write Burnetti a positive letter of recommendation, presumably to support any of Burnetti's future endeavors. At the time, the Board did not ask Burnetti to formally resign from the Department Chair position.

Burnetti alleges that this demotion was inconsistent with her performance. She received the highest rating possible, "distinguished," in her personnel evaluation for the 2019-2020 school year, and another high rating, "excellent," in her performance as Department Chair in 2018-2019. The faculty of the Fine Arts Department seemed to agree; they submitted a letter to the Board objecting to her removal.

In February 2020, the Board asked Burnetti to formally resign from her Department Chair position. If she chose not to resign, the Board informed her, it would issue a public "Notice of Non-Renewal." *Id.* ¶ 92. According to Burnetti, such a public notice would destroy any of her prospects of working for the school district in an administrative position. Burnetti refused to resign and instead requested a hearing to contest the allegations listed in the Notice of Non-Renewal. Due to COVID-19-related difficulties, Burnetti was unable to present evidence during a hearing to rebut the allegations in the notice. Burnetti resumed her teaching position, for which she was paid a lower salary than the Department Chair position, for the 2020-2021 school year.

On April 27, 2021, Burnetti filed this lawsuit against the Board and the individual defendants. She claims that the defendants retaliated against her and afforded her inadequate procedural protections when they demoted her in 2018 and 2019. Based on these claims, Burnetti alleges that the defendants violated her rights under the First and Fourteenth Amendments of the U.S. Constitution as well as the Illinois Whistleblower Act. Burnetti also alleges that the defendants violated the Fair Labor Standards Act ("FLSA") and the Illinois Wage Payment and Collection Act ("IWCPA") by withholding her pay and retaliating against her when she complained about her wages. Defendants collectively move to dismiss some of Burnetti's claims against certain defendants.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At this stage, the Court accepts as true all the well-pleaded facts in Burnetti's complaint and draws all reasonable inferences in her favor. *Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

A "claim" is "the aggregate of operative facts which give rise to a right enforceable in the courts." *Florek v. Vill. of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011) (quoting *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943)). Under Rule 10(b), a plaintiff may set forth separate claims in "counts," but what the "counts" of the complaint assert are not necessarily distinct claims so much as different legal theories offered in support of the claims asserted in the complaint. When presented with a motion to dismiss pursuant to Rule 12(b)(6), courts may dismiss deficient claims, but cannot dismiss legal theories. *See Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012). Here, Burnetti's complaint contains several claims that various defendants injured her: that the defendants retaliated against her by demoting her without adequate process in 2018, that they retaliated against her by doing the same in 2019, and that they withheld wages and retaliated against her when she asked for them. To avoid the pitfall of improperly dismissing legal theories instead of claims, the Court addresses each claim, rather than each "count," in turn.

A. **Timeliness of Claims Based on 2018 Demotion**

Burnetti sues the defendants under 42 U.S.C. § 1983 to recover for alleged violations of her First and Fourteenth Amendment rights. When a plaintiff files a § 1983 suit, courts look to the state where the injury occurred to determine the applicable statute of limitations, or the time limit within which a plaintiff must file a complaint. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). The statute of limitations for personal-injury actions governs claims for relief founded on § 1983; in Illinois, such claims are subject to a two-year limit. *Id*; 725 ILCS 5/13–202.

Defendants seek to dismiss Burnetti's claims based on her July 2018 demotion, arguing that she filed her April 2021 complaint almost a year too late. That affirmative defense is ordinarily one a plaintiff need not anticipate and plead around. *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). A plaintiff may, however, plead herself out of court when she alleges facts sufficient to establish that her claim is untimely. *Id.* at 674-75.

Burnetti's own allegations prevent her from recovering for constitutional violations based on the 2018 demotion. The clock starts running on a statute of limitations when a claim accrues, or when the plaintiff knew or should have known that her rights had been violated. *Hileman v. Maze*, 367 F.3d 694, 697 (7th Cir. 2004). When a terminated plaintiff alleges that an employer deprived her of property rights in public employment without due process, the claim accrues on the date of actual termination. *Lawshe v. Simpson*, 16 F.3d 1475, 1480 (7th Cir. 1994). By the same token, Burnetti's allegations that she was demoted without process accrued on the day that she was demoted. Similarly, when a plaintiff alleges that a defendant retaliated in violation of the First Amendment, the claim accrues "immediately after the retaliatory act occurred." *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). Here, the retaliatory act—the demotion—occurred in July 2018. In other words, Burnetti's claim accrued almost three years before she filed this lawsuit. Her allegations therefore establish that her claim is time-barred.

In response, Burnetti argues that she realized much later than 2018 that the defendants violated her rights. She contends that it was not until she learned about the defendants' efforts to oppose the document destruction investigation—such as the defendants' encouragement of parents to complain about the new administration and the Board's March 2019 request that the State's Attorney drop the investigation—that she perceived the defendants' retaliatory motives. She further argues that it only became clear in 2019 that defendants intended to bar her from any administrative position because her second demotion was accompanied by a decrease in pay.

That argument does not work at all for Burnetti's due process theory. No matter the defendants' motivations, Burnetti knew which procedures the Board followed—and more saliently, did not follow—leading up to her demotion. At the time she was demoted, therefore, she was in the same position to know whether the Board complied with the Illinois statute governing reclassification of assistant principals, 105 ILCS 5/10-23.8b, as she was when she filed the Complaint. Burnetti therefore cannot pursue relief based on that theory for her 2018 demotion.

Burnetti's delayed-appreciation argument also fails to support her First Amendment retaliation theory. At the time that Burnetti was demoted, she knew that she had participated in an investigation into a former administration and that the subsequent administration spearheading that investigation was ousted. She also knew that the Interim Superintendents' proffered reason for her

demotion—that they had heard she was performing poorly—was inconsistent with her positive performance reviews. Burnetti argues that she could not have brought a § 1983 claim based solely on those facts at the time. The focus of the accrual inquiry, however, "is on the discovery of the harm itself, not the discovery of the elements that make up a claim." *Cancer Found.*, 559 F.3d at 674. Burnetti did not need to be certain that the defendants had retaliated against her to bring a claim at that point; she needed to know only that she had been injured and that wrongdoing by defendant was possible. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). "If a plaintiff were entitled to have all the time [s]he needed to be *certain* [her] rights had been violated, the statute of limitations would never run—for even after judgment, there is no certainty." *Id.* From the spurious justification for her demotion and her involvement in the investigation, Burnetti should have known that retaliation was a possible explanation that merited some inquiry. *See Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 861 (7th Cir. 2005).

There are, of course, instances in which an injury only becomes apparent after cumulative instances of wrongdoing. *See Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014). A paradigmatic example is a sexual harassment case in which the first instance of misconduct, viewed in isolation, does not rise to the level of a cognizable injury. *See Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008). In that case, the plaintiff need not sue immediately when faced with the early manifestations of discrimination. *Id.* Burnetti's injury, however, is not one that snowballed over time. As the Seventh Circuit put it, "[r]eassignment of duties and suspensions are discrete acts. Nothing about their duration or repetition changes their nature in such a way that a cumulative violation could arise." *Bass*, 746 F.3d at 840. Because Burnetti knew that she suffered a discrete injury in July 2018, her April 2021 lawsuit is untimely. Given that any amendment would be futile, and no alternative theory under which the 2018 demotion would be timely having been identified, Burnetti's claims based on the 2018 demotion are therefore dismissed with prejudice. *See Steinken v. Sears, Roebuck & Co.*, No. 16 CV 7903, 2017 WL 2506426, at *3 (N.D. Ill. June 8, 2017).

### B. Board's Liability for 2019 Demotion Claims

Although the two-year statute of limitations bars Burnetti's 2018 demotion claims, her December 2019 demotion claims are timely. The defendants do not contest timeliness, but rather argue that Burnetti cannot recover from the Board for any alleged violations of her First or Fourteenth Amendment rights based on that demotion.

As a municipal defendant, the Board faces liability under § 1983 for official policies or customs that cause a plaintiff's constitutional deprivation. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690, 696-99 (1978). "The critical question under *Monell,* reaffirmed in *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 131 S. Ct. 447, 178 L.Ed.2d 460 (2010), is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc). To pinpoint municipal action rather individual action as the source of the injury, a plaintiff must allege facts sufficient to plausibly show the violation was caused by 1) the Board's enforcement of an express policy, 2) a widespread practice that is so persistent as to constitute a custom or usage with the force of law, or 3) an official with final policymaking authority. *See Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 884 (7th Cir. 2019); *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001).

Burnetti does not allege that the Board adopted an express policy that sanctioned retaliation or deprived employees of procedural protections. Instead, she argues that the Board acted pursuant to its final policymaking authority when it approved her demotion.

Even a single decision attributable to a municipal entity can give rise to *Monell* liability. *Bradley*, 929 F.3d at 884-85. If an action is "directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Thus, if the board of a municipal entity decides to terminate—or, in this case, demote—an employee "by virtue of [its] authority as [a] policymaker[]," that action is "automatically considered [one] of the municipality itself under § 1983." *Bradley*, 929 F.3d at 885.

As the defendants point out, the Complaint does not spell out directly that the Board approved Burnetti's demotion pursuant to official policy. The Complaint's allegations do, however, reasonably support that inference, which is all that is required at the pleadings stage. *See Iqbal*, 556 U.S. at 678. Burnetti alleges that the Board is charged with setting policy for the district and that the defendants, including the Board, demoted her. Indeed, Illinois law gives the Board authority "to adopt and enforce all necessary rules for the management and government of the public schools of their district" and to "appoint teachers and fix salaries." 105 ILCS 5/10-20.5; 5/10-20.7. Burnetti further alleges that the Board issued a public "Notice of Non-Renewal" without affording her adequate process when she refused to resign from her Department Chair position. From those allegations, it is reasonable to infer that the Board exercised its authority as final decisionmaker to cause Burnetti's alleged harm, *i.e.*, demote her.

Defendants argue that the Complaint lacks any allegations that the Board as a whole, rather than individual Board members, injured Burnetti. But even if the allegations recounted above did not plausibly support that inference, Burnetti's response brief fills in the gaps. In her opposition, she argues that the Board "is responsible for approving both her demotions" and acted pursuant to that responsibility when it demoted her. Opp. Br. at 7, ECF No. 15. "[F]acts alleged by a plaintiff in a brief in opposition to a motion to dismiss 'may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint.'" *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997)). That the Board is responsible for approving demotions is certainly consistent with Burnetti's allegations that the Board sets policy for the district. Burnetti has therefore alleged enough to show that Board policy gave rise to the harm.[1] The defendants' motion to dismiss Burnetti's claims against the Board for the 2019 demotion is denied.[2]

---

[1] The Court finds that Burnetti adequately alleges that the Board acted pursuant to final policymaking authority when demoting her. It therefore need not consider her alternative argument that its retaliatory actions constituted a widespread practice that give rise to *Monell* liability.

[2] To be clear, the Court finds only that Burnetti's allegations point to the Board, rather than any individual defendants, as the source of her injury. Defendants contend that Burnetti failed to adequately allege a Board policy or custom caused her injury; they do not defend the Board's actions under the First or Fourteenth Amendment on the merits. The Court does not decide whether

### C. Individual Defendants' Liability for 2019 Demotion Claims

Burnetti further alleges that Defendants Yonke, Martindale, Hymen, and Garlovsky individually violated her constitutional rights. A plaintiff must allege that a defendant is personally involved in any constitutional deprivation to support a theory of relief based on § 1983. *Gonzalez v. McHenry County*, 40 F.4th 824, 828 (7th Cir. 2022). That means the plaintiff must allege that the defendant "both (1) 'kn[ew] about the conduct' and (2) facilitate[d], approve[d], condone[d], or turn[ed] a blind eye toward it." *Id.* (quoting *Kemp v. Fulton County*, 27 F.4th 491, 498 (7th Cir. 2022)). The defendants argue that Burnetti's allegations do not support an inference that they were personally involved in her 2019 demotion.

Starting with Interim Superintendents Yonke and Martindale, Burnetti has not alleged any facts that would suggest they knew of or contributed to the 2019 demotion. Although Burnetti alleges facts suggesting that Yonke and Martindale decided to demote her in 2018, those claims are time-barred. The Complaint does not explain how Yonke or Martindale contributed to the 2019 demotion decision. In fact, Burnetti's own allegations establish that Yonke and Martindale were no longer acting as Interim Superintendents in September 2019. By that time, Law, the "new [s]uperintendent," agreed to compensate her for her claimed missing wages. Compl. ¶ 74, ECF No. 1. Because Yonke and Martindale could not have been involved in the demotion during the limitations period for Burnetti's claims, the Court dismisses Burnetti's claims against them.

Burnetti's complaint similarly lacks any facts to suggest that the individual board members Hymen and Garlovsky facilitated, approved, or acquiesced in the 2019 demotion. Her general proclamations that the defendants were "personally involved and responsible" in the deprivation of her rights are the kind of conclusory recitals courts routinely reject. *See, e.g.*, *M.F. on behalf of R.L. v. Magellan Healthcare Inc.*, No. 20 CV 3928, 2021 WL 1121042, at *6 (N.D. Ill. Mar. 24, 2021; *Williams v. Rankin*, No. 18 CV 6748, 2020 WL 4365642, at *3 (N.D. Ill. July 30, 2020). The allegations surrounding the 2019 demotion do not mention Hymen or Garlovsky at all; Burnetti claims only that Finn told her that she "was again being demoted." Compl. ¶ 86, ECF No. 1. From that allegation alone, it is implausible to infer that the whims of two individual Board members were the source of that decision. Nor does Burnetti anywhere allege that the Board or anyone else delegated the authority to demote her to Hymen and Garlovsky. To the contrary, Burnetti's allegations that Yonke and Martindale demoted her in 2018 during a meeting suggest that the Board delegated that authority to the superintendents. *See also Burton v. Bd. of Educ. for the City of Chicago*, No. 17 C 1337, 2018 WL 1453548, at *4 (N.D. Ill. Mar. 23, 2018) (noting that a school board is authorized to delegate authority to make employment decisions to the superintendent under Illinois law).

---

Burnetti's allegations, if true, would establish that the Board retaliated against her or violated her due process rights.

To be sure, the Complaint purports to explain Hymen's and Garlovsky's alleged retaliatory motives to avenge the outgoing administration. Burnetti argues that those motives—along with the allegations that Hymen and Garlovsky encouraged parents and teachers to file complaints before her demotion in 2018—sufficiently establish personal involvement in the 2019 demotion. But those allegations of ill will do not plausibly establish that the defendants, simply by virtue of their positions on the Board, caused the deprivation of Burnetti's constitutional rights a year later. *Harris v. Bd. of Educ. of the City of Chicago*, No. 05 C 3892, 2005 WL 2978736, at *2 (N.D. Ill. Nov. 2, 2005) (finding that plaintiff could not "attribute personal involvement in the alleged constitutional violations to [defendants] simply because of their titles"). Burnetti's claims against the individual defendants pertaining to the 2019 demotion are therefore dismissed.

### D. Wage-Withholding Retaliation Claims

Finally, the defendants argue that Burnetti does not state a claim that would support a theory of retaliation under the FLSA. Burnetti concedes that she is pursuing relief under the FLSA only as to Defendants Hymen, Garlovsky and Finn. She alleges that the defendants retaliated against her after she sought to recoup her wages. To plead a violation of the FLSA, "a plaintiff must plausibly allege that [s]he engaged in activity protected under the Act, h[er] employer took an adverse employment action against h[er], and a causal link exists between the two." *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891, 894 (7th Cir. 2018).

The Complaint omits any mention of Hymen and Garlovsky's role in the negotiation of Burnetti's missing wages. Burnetti recounts only the Board and Superintendent Law as participating in those decisions. In her response brief, Burnetti argues that Hymen and Garlovsky are charged with final approval of payments to teachers by virtue of their positions as Board members. She characterizes her allegations as showing that the defendants refused to pay her wages in retaliation for actions she took as Assistant Principal. Without any allegations that Hymen and Garlovsky participated in any of the wage-related discussions, their positions on the Board alone do not raise a reasonable inference that they took an adverse employment action against Burnetti. *See Knapp v. City of Markham,* No. 10 C 03450, 2011 WL 3489788, at *10 (N.D. Ill. Aug. 9, 2011). And even if the Hymen's and Garlovsky's Board memberships could support that inference, Burnetti does not allege that Hymen and Garlovsky retaliated against her for any conduct protected by the FLSA, such as seeking wage reimbursement. Rather, she alleges that defendants withheld wages in retaliation for other, non-wage related conduct. "To plausibly state a claim for retaliation under the FLSA, a plaintiff must complain about conduct regulated by the FLSA, not simply complain generally about wages." *Seo v. H Mart Inc.*, No. 19-CV-03248, 2021 WL 5493238, at *8 (N.D. Ill. Nov. 23, 2021). Accordingly, the Court dismisses the wage-based retaliation claims against Hymen and Garlovsky.

Burnetti's allegations against Defendant Finn do not support a theory of FLSA retaliation either. Again, Burnetti does not mention Finn at all in her factual allegations about her withheld wages. She attempts to manufacture a causal link through timing: Finn demoted her in December 2019, a month after she refused to sign the Board's offered settlement agreement to resolve her legal challenges. That is not enough to plausibly allege a causal link. Nothing in the Complaint suggests that Finn knew about Burnetti's discussion about her wages with the Board and Superintendent Law, much less that those discussions influenced any of her actions. *See Silver v. Townstone Fin., Inc.*, No. 14-CV-1938, 2015 WL 1259507, at *3 (N.D. Ill. Mar. 17, 2015)

(dismissing claim purporting to give rise to FLSA retaliation liability where plaintiff failed to allege that defendants knew about plaintiffs' grievances). The missing link between Finn's role in Burnetti's wage discussions and her subsequent demotion is fatal to Burnetti's claim against her. The wage-based retaliation claim against Finn is also dismissed.

### E. Illinois Whistleblower Act Theory

Burnetti also seeks relief under the Illinois Whistleblower Act, which prohibits public employers in Illinois from retaliating against employees who report misconduct. *See* 740 ILCS 174. She concedes that the applicable one-year statute of limitations bars her from recovering damages from the defendants for retaliatory acts that occurred in 2019. She argues, however, that she intends to pursue equitable relief available under that statute. Defendants offer no argument in response and appear to concede that Burnetti's claims support a theory of relief under the Illinois Whistleblower Act. Even if the defendants' silence did not amount to a concession, Burnetti's claims of retaliation remain in play, at least against the Board and Defendant Finn. As discussed, the Court cannot dismiss a claim that plausibly offers relief under at least one theory (even if other theories identified in the complaint fail). *See ACF 2006 Corp. v. Mark C. Ladendorf, Att'y at L., P.C.,* 826 F.3d 976, 981 (7th Cir. 2016) ("[M]ultiple legal theories in support of [a] claim differ from multiple claims that must be separately pleaded."). Moreover, a prayer for relief is a remedy, rather than an independent claim subject to dismissal pursuant to Rule 12(b)(6). *See Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 702 (N.D. Ill. 2020). The type of relief to which Burnetti is entitled is an issue that can be resolved at summary judgment or trial.[3] *See id.* To the extent the defendants seek to dismiss Burnetti's claims of retaliation because she cannot seek a particular remedy under the Illinois Whistleblower Act, the Court denies the motion.

\* \* \*

To recap: The Court dismisses Burnetti's claims relating to her 2018 demotion with prejudice because they are time-barred. The claims arising from the 2019 demotion are more complicated. From the outset, the defendants appear to concede that Burnetti states a claim against Defendant Finn. As explained in this Order, the Court also denies the motion to dismiss the claims against the Board for its role in the 2019 demotion. Although the Court dismisses the claims against Defendants Yonke, Martindale, Hymen, and Garlovsky relating to the 2019 demotion, that dismissal is without prejudice to allow Burnetti the customary opportunity to rectify the deficiencies identified in this Order. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). Finally, the defendants also appear to concede that Burnetti states a claim against the Board for which the FLSA's and IWCPA's wage-collection provisions may provide relief. The claims

---

[3] By contrast, the question of whether Burnetti may pursue injunctive relief against the individual defendants implicates a separate claim: that the defendants are likely to harm Burnetti in the future. Burnetti agrees that her claims against Defendants Hymen, Garlovsky, Martindale, and Yonke for injunctive relief are moot because those defendants no longer work for Township High School District 113. Her claims for injunctive relief are therefore dismissed for lack of subject-matter jurisdiction. *See Doe v. L. Sch. Admission Council, Inc.*, No. 17-CV-06656, 2022 WL 4599264, at \*6 (N.D. Ill. Sept. 30, 2022).

against the individual defendants for wage-related retaliation are also dismissed without prejudice. Burnetti is directed to submit an amended complaint by June 2, 2023.

Dated: May 4, 2023

John J. Tharp, Jr.
United States District Judge