## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AMY BURNETTI | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 cv 2252 |
| | ) | |
| | ) | Judge John J. Tharp Jr. |
| v. | ) | |
| | ) | |
| BOARD OF EDUCATION FOR | ) | |
| TOWNSHIP HIGH SCHOOL | ) | |
| DISTRICT 113, | ) | |
| | ) | |
| | ) | |
| And | ) | |
| | ) | |
| Deborah Finn | ) | **JURY TRIAL DEMANDED** |
| (in her individual capacity) | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Amy Burnetti ("Plaintiff"), by and through her attorney, Noelle Brennan & Associates, Ltd., alleges the following against Defendants Board of Education for Township High School District 113 ("District 113") and individual Defendant, Highland Park High School Principal Deborah Finn ("Finn"). ("Defendants").

## NATURE OF THE ACTION

1.     This action is brought pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's rights under the First Amendment of the United States Constitution and the Fourteenth Amendment of the United States Constitution for violation of her due process rights; the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.* (the "FLSA")

and the Illinois Wage Payment and Collection Act, 820 ILCS§ 115/1 *et seq.* (the "IWPCA") for failure to pay owed wages and retaliation for complaining of same; and the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* for retaliating against Plaintiff after she reported misconduct.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1343, and 29 U.S.C. § 216(b).

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b). Defendants' principal offices and facilities are in Highland Park, Illinois.  The acts that gave rise to the allegations in this Complaint occurred in the Northern District of Illinois.

## PARTIES

5.      Plaintiff Amy Burnetti is a citizen of the United States and resident of Illinois.

6.      Defendant Board of Education for Township High School District 113 ("District 113") is a municipality organized under the laws of the State of Illinois and is charged with setting policy for Township High School District 113.

7.      Defendant Deborah Finn is the Principal of Highland Park High School.

8.      At all times relevant to this complaint, Defendant District 113 has been an employer, within the meaning of the FLSA and IWPCA.

## FACTUAL ALLEGATIONS

9.     Plaintiff repeats and re-alleges all previous paragraphs of this complaint.

**PLAINTIFF'S WORK HISTORY AT HIGHLAND PARK HIGH SCHOOL**

10.     Plaintiff has been employed as a Teacher, a Department Chair, and an Assistant Principal at Defendant since 2009.

11.     Plaintiff possesses a Bachelor of Science in Business Administration, a Master of Business Administration, a Master of Arts in Teaching, and a Master of Arts in Education Leadership.

12.     Plaintiff also possesses the following certifications: State of Illinois Chief School Business Official Endorsement; State of Illinois General Administration; State of Illinois Teaching Certificate; and endorsements in Business, Marketing and Computer Education, Social Studies, and AP Economics.

13.     Plaintiff was hired by Defendant District 113 in 2009 as a Business Education Teacher at Highland Park High School.

14.     As a teacher for Defendant District 113, Plaintiff regularly received performance evaluations ratings of "Excellent" and "Distinguished."

15.     In 2013, Plaintiff was promoted to the administrative position of Chair of Applied Arts and Fine Arts at Highland Park High School.

16.     As the Chair of the Applied Arts and Fine Arts Chair from 2013 through 2017, Plaintiff regularly received performance evaluations ratings of "Excellent."

3

17.     In 2017, Plaintiff was again promoted to the administrative position of Assistant Principal at Highland Park High School.

18.     Plaintiff was given a one-year contract for the Assistant Principal for the 2017-2018 school year, with the expectation it would be renewed if she performed well.

19.     Plaintiff excelled as the Assistant Principal. Her performance evaluation reflected a rating of "Excellent."

**PLAINTIFF AND NEW HPHS ADMINISTRATION REPORT MISCONDUCT**

20.     In 2016, Chris Dignam was hired by District 113 to serve as Superintendent for a three-year period.

21.     At the end of the 2016-2017 school year, the then-Principal, Tom Koulentes, and two Assistant Principals, Eileen McMahon and Casey Wright from Highland Park High School submitted their resignations.

22.     As a result of these resignations, Plaintiff was offered and accepted the position as Assistant Principal at Highland Park High School beginning in the 2017-2018 school year.

23.     In addition to Plaintiff, Dignam hired a diverse group of administrators in an effort to eliminate and reverse improper past practices and create an inclusive environment for District 113's students, teachers and administrators.

**PLAINTIFF REPORTS DESTRUCTION OF RECORDS AND EVIDENCE**

24. While serving as an Assistant Principal during the 2017-2018 school year, Plaintiff was involved in reporting misconduct of the prior school administrators, participating in an external investigation into allegations of misconduct, and participating in a criminal investigation into allegations of misconduct.

25. In June of 2017, Superintendent Dignam's team, including Plaintiff (hereinafter the "new HPHS administration"), discovered that the outgoing administration had deleted or destroyed thousands of school records.

26. Specifically, the new HPHS administration discovered and observed (via video cameras) that the prior administration had taken carts full of school records out of the facility, had put other records in a trash compactor, and had improperly deleted thousands of electronic records.

27. Ultimately, the new HPHS administration determined more than 10,000 documents were destroyed, and 10,000-20,000 documents were found in the trash compactor. The destroyed records included confidential student materials such as 504 Plans, student psychological assessments, Individualized Education Programs, and financial records, among other items.

28. Other items missing or destroyed included a football helmet and equipment worn by a student who was injured during a HPHS football game and who later filed a suit for damages.

29.    The new HPHS administration, including the Plaintiff, reported this misconduct to District 113's Board of Education and ordered an external investigation into the matter.

30.    The investigation was conducted by the law firm of Robbins Schwartz. As part of that investigation, attorneys from Robbin Schwartz interviewed Plaintiff and she provided evidence regarding some of the destroyed records and materials.

31.    As a result of the Robbins Schwartz investigation, the matter was referred to the Lake County State's Attorney office for criminal investigation.

32.    Plaintiff provided evidence and testimony as part of the State's Attorney criminal investigation, including being interviewed by the State's Attorney's office regarding her knowledge of the destruction of documents and items.

33.    Upon information and belief, certain members of Defendant District 113, including but not limited to Elizabeth Garlovsky and Debbie Hymen, opposed the external investigation and referring the matter to the State's Attorney.

34.    Upon information and belief, certain members of Defendant District 113, including but not limited to Elizabeth Garlovsky and Debbie Hymen, opposed those actions because of their personal relationships with the former administration.

**NEW HPHS ADMINISTRATION REVERSES OLD ADMINISTRATION AND BARS CHILD SEX OFFENDER FROM CAMPUS**

35.    Also, during the 2017-2018 school year, the new HPHS administration discovered that the prior administration had allowed a child sex offender, who was a

parent of a HPHS student, to be present on campus in violation of state law and without required oversight.

36. Specifically, the prior administration had allowed the child sex offender on campus without supervision, as required by law.

37. Superintendent Dignam reversed and ended the practice of allowing the known child sex offender to be present on campus.

38. Plaintiff, in her role as the Assistant Principal, met with and delivered the news to the mother that the father (the child sex offender) would no longer be allowed on campus, except as in accordance with Illinois law.

39. The parents sought to contest the new HPHS administration decision and contacted the District 113 Board Members to complain of the decision.

40. Upon information and belief, some of the then-current Board Members were friends with the parents.

41. Upon information and belief, some Board Members sought to reverse Superintendent Dignam's decision barring the child sex offender from campus.

42. The parents also contacted the Board's outside counsel, Anthony Loizzi, to attempt to reverse the decision of Superintendent Dignam.

43. The parents also sought to meet again with Plaintiff, to convince her to reverse the decision to bar the father (the child sex offender) from being present on campus.

44. Plaintiff could not reverse the decision or otherwise accommodate the parent's request.

7

**PLAINTIFF PREPARES FOR 2018-2019 SCHOOL YEAR**

45.     In the Spring of 2018, Plaintiff met with Human Resources Director Thomas Krieger about her 2018-2019 Assistant Principal contract and her salary expectations.

46.     In particular, Plaintiff requested that her salary be commensurate with a similarly situated male Assistant Principal, Steve Tucker, based on their respective experience.

47.     Plaintiff met with Human Resources Director Thomas Krieger again on June 6, 2018 and June 7, 2018.

48.     Shortly thereafter, Plaintiff was offered a contract to renew her position as Assistant Principal for the 2018-2019 year and signed such contract on July 1, 2018.

49.     The contract, which is titled Tenured Full-Time Teacher Contract (as was the 2017-2018 Assistant Principal contract), included the pay for the Assistant Principal pay differential of 22% ("MA+60w/22%").

**DISTRICT 113 BOARD RETALIATES AGAINST NEW ADMINISTRATION AND PLAINTIFF**

50.     As a result of the new HPHS Administration's actions in reporting misconduct, authorizing an investigation into misconduct, participating in such investigation, and reversing the decision on the presence on campus of the known child sex offender, the Board took retaliatory actions against the new HPHS administration.

51.     Upon information and belief, Board Members, including Board Members Garlovsky and Hymen, met with teachers and/or community members to encourage them to raise complaints about the new HPHS Administration.

52.     Upon information and belief, certain Board Members, including Board Members Garlovsky and Hymen, instructed individuals to file large numbers of complaints because there is power in numbers.

53.     In the Spring of 2018, District 113 fired Superintendent Dignam and then reassigned the HPHS Principal, Elizabeth Robertson, to the Administration Building.

54.     District 113 hired two Interim Superintendents, Linda Yonke and Ben Martindale to replace Superintendent Dignam.

55.     On July 18, 2018, two candidates were interviewed to replace the HPHS principal, including the later selected candidate (first interim and then permanent), Defendant Deborah Finn.

56.     At 5pm on July 18, 2018, Plaintiff received a text message from Director Krieger to report to the Administration Building the following morning.

57.     On July 19, 2018, Plaintiff met with Interim Superintendents Yonke and Martindale and was told she was being "reassigned" or demoted back to her former position of Department Chair of Applied Arts and Fine Arts.

58.     Upon information and belief, Defendant Interim Principal Deborah Finn proposed that Yonke and Martindale demote Plaintiff.

59.     Plaintiff had just signed a new contract to be the Assistant Principal for the 2018-2019 year nineteen days before this meeting.

60.     When Plaintiff asked for an explanation for her being demoted, she was told that the Interim Superintendents had "heard" that Plaintiff was not a good Assistant Principal.

61.     Upon information and belief, neither Yonke nor Martindale inquired with Plaintiff's supervisors about Plaintiff's performance as an Assistant Principal at the time they demoted her.

62.     Plaintiff's demotion violated the process for such demotion or reassignment that is required by Illinois statute 105 ILCS 5/10-23.8b.

63.     Plaintiff was never provided with a written explanation or other notice regarding the reason she was demoted from the Assistant Principal position.

64.     Later, during an August 6, 2018 meeting with Interim Superintendent Yonke, Yonke told Plaintiff that any new Principal needs to be able to select an Assistant Principal.

65.     Upon information and belief, the new HPHS principal, Deborah Finn, has professional and personal ties with the prior HPHS administration, Koulentes, McMahon, and Wright, who were then under investigation by the State's Attorney's office.

66.     Upon information and belief, one reason that Defendant Finn and Defendant District 113 sought to have Plaintiff demoted was because of Plaintiff's participation in the investigation into Koulentes, McMahon, and Wright.

67.     In particular, when Plaintiff reported and participated in the external investigation into the misconduct of the prior administration, and when she reported potential criminal activity to the State's Attorney, Plaintiff's actions were protected by the Illinois Whistleblower Act.

## DEFENDANTS FAIL TO PAY PLAINTIFF FOR 28 DAYS OF WORK

68.     Because Defendant District 113 reassigned Plaintiff after she had begun working as Assistant Principal for the 2018-2019 school year, Plaintiff worked an extra 28 days for which she was not paid, which amounted to approximately $17,000.

69.     Plaintiff complained about not being paid for these 28 days on several occasions, including to Director Krieger, Interim Superintendent Yonke, and later to permanently hired Superintendent Dr. Bruce Law.

70.     In September of 2019, the new Superintendent Law agreed that Plaintiff would be paid for the 28 days that she worked without compensation.

71.     In November of 2019, Defendant District 113 sent Plaintiff a Settlement and Release agreement that required her to release any and all claims related to her demotion from Assistant Principal to Department Chair, and any other claims, in order to be paid the owed wages.

72.     Plaintiff refused to sign the Release and requested she be paid the wages.

## DISTRICT 113 SHUTS DOWN CRIMINAL INVESTIGATION REGARDING DESTRUCTION OF RECORDS AND REVERSES COURSE TO ALLOW CHILD SEX OFFENDER BACK ON CAMPUS

73.     After District 113 successfully removed Superintendent Dignam, Principal Robertson, and Assistant Principal Burnetti (Plaintiff), they requested that the State's Attorney shut down the criminal investigation then being conducted by the State's Attorney's office regarding the destruction of records and materials.

74.     On March 22, 2019, the District's General Counsel Anthony Loizzi sent a letter to the State's Attorney asking that the investigation be dropped.

75.     Specifically, Mr. Loizzi stated that the District did not "suffer any meaningful harm" and "neither the students nor the community at large have been adversely affected."

76.     He further stated that the District "has no interest in pursuing any criminal charges or further criminal investigation."

77.     Mr. Loizzi sent this letter although it was earlier determined, and was relayed to the Board, that Mr. Loizzi had a personal relationship with the former HPHS Principal who was under investigation, which created a conflict of interest or an appearance of a conflict of interest.

78. Also, during the 2018-2019 (and 2019-2020) school year, Plaintiff informed the then-HPHS Administrative team (under Principal Finn) that the father on the child sex offender list was not supposed to be present on campus.

79. Plaintiff reported to the new HPHS Administration that the Board, through its attorney, had previously sent letters to the parents informing them that the father was not permitted on campus (subject to certain statutory exceptions).

80. Despite the statutory prohibition, the father on the child sex offender list was (and is) permitted back on the HPHS campus.

**PLAINTIFF IS DEMOTED FROM DEPARTMENT CHAIR TO TEACHER**

81. In Plaintiff's performance evaluation as the Department Chair for the 2018-2019 school year she was again rated as "Excellent."

82. In December of 2019, Plaintiff was told by Defendant Principal Finn that Plaintiff was again being demoted. At that meeting, Defendant Principal Finn told Plaintiff she was posting the Department Chair for Applied Arts and Fine Arts and the Plaintiff would be reassigned to teach for the 2020-2021 school year.

83. When Plaintiff asked why she was being demoted, Defendant Finn replied that Plaintiff had been "inappropriate" at an administration meeting.

84. At that same meeting (where Plaintiff is told she is being demoted), Defendant Finn offered to provide Plaintiff with a "glowing" letter of recommendation.

85. Plaintiff's personnel evaluation for the 2019-2020 school year reflects she was rated as "Distinguished", which is the highest rating available.

86.    After learning that Plaintiff was being demoted from the Department Chair position, the entire faculty of the Fine Arts and Applied Arts Department submitted a letter objecting to Plaintiff's demotion. The letter stated, in part:

> We are writing to express our disappointment and concern with the decision to remove Amy Burnetti as the Fine and Applied Arts Department Chair. Amy has served as an administrative leader for the Fine and Applied Arts Departments for the last seven years, including one year as assistant principal. In those seven years, Amy consistently went above and beyond the call of duty as a leader, colleague, confidant, and friend. In her time as department chair, Amy mentored several new teachers into tenured and dynamic professionals. Amy spent countless hours observing and learning about each of the twelve distinct subject areas in our department. In classroom observations, Amy excelled at providing guidance to improve student learning, even in areas where she is not an expert on the content. Her knowledge of the craft of teaching empowers her to provide meaningful feedback and support to all teachers. Amy committed herself to knowing as much as possible about each of our areas in order to support the needs of all students, find ways for programming to reach larger and more diverse groups of students, and advocate for all of our programming.

87.    Although Plaintiff knew that she was being reassigned to a teaching position, she was not asked to resign or formally withdraw from the Department Chair position.

88.    On February 27, 2020, however, Plaintiff was told by District 113 Human Resources Director Kreiger that she must officially "resign" her Department Chair position or be subject to a public "Notice of Non-Renewal."

89.    Although Ms. Burnetti had no intention of "resigning" and did not want to relinquish her position as Department Chair, the District tried to force her to resign by threatening to derail her career by issuing a public "Notice of Non-Renewal" at the next Board meeting.

14

90. These tactics were used to coerce Plaintiff (and others) into "resignations" as well.

91. Plaintiff was given only nine days to submit her "resignation" to avoid a public "Notice of Non-Renewal."

92. Defendants knew that a public "Notice of Non-Renewal" would eliminate Plaintiff's opportunity to obtain any future administrative level position.

93. Plaintiff refused to resign and requested a hearing to rebut the information contained in the "Notice of Non-Renewal."

94. Because of the COVID-19 pandemic, which resulted in various restrictions on gatherings, and which required Plaintiff and her potential witnesses to address the immediate crises of the pandemic, Plaintiff was unable to present her evidence to rebut the allegations in the "Notice of Non-Renewal."

95. Plaintiff was demoted back to a teaching position for the 2020-2021 school year at a lower salary.

## COUNT I -§ 1983 FIRST AMENDMENT

96. Plaintiff repeats and re-alleges all previous paragraphs of this complaint.

97. Plaintiff brings this count to remedy violations of 42 U.S.C. § 1983.

98. Plaintiff exercised her First Amendment right and engaged in constitutionally protected speech by reporting misconduct and potential criminal behavior.

15

99.  As a result, Defendants retaliated against Plaintiff by demoting her in 2019 and taking action that prevents her from obtaining an administrative level position in the future.

100.  Defendant Finn was acting under the color of state law when she retaliated against Plaintiff.

101.  Defendant Finn was personally involved in and responsible for retaliation against Plaintiff.

102.  As a result, Plaintiff has suffered loss of position, loss of income, loss of pension benefits and loss of future benefits, positions, and opportunities. Plaintiff has also suffered emotional distress, physical injuries, and other compensatory damages.

## **COUNT II-§ 1983 FOURTEENTH AMENDMENT**

103.  Plaintiff repeats and re-alleges all previous paragraphs of this complaint.

104.  Plaintiff brings this count to remedy violations of 42 U.S.C. § 1983.

105.  Defendants deprived Plaintiff of due process in violation of the Fourteenth Amendment in that:

    a.  Plaintiff had a protected property interest in her employment;

    b.  Defendants, acting under the color of law, deprived Plaintiff of her property interest; and

    c.  Without due process of law.

16

106. Defendant Finn was acting under the color of state law when she deprived Plaintiff of due process.

107. Defendant Finn was personally involved in and responsible for depriving Plaintiff of due process.

108. As a result, Plaintiff has suffered loss of position, loss of income, loss of pension benefits and loss of future benefits, positions, and opportunities. Plaintiff has also suffered emotional distress, physical injuries, and other compensatory damages.

**COUNT III-FLSA FAILURE TO PAY WAGES**

109. Plaintiff repeats and re-alleges all previous paragraphs of this complaint.

110. Plaintiff is an employee within the meaning of the FLSA.

111. Defendant District 113 is a covered entity under the FLSA.

112. Plaintiff engaged in work over a 28-day period for which she was entitled to be paid the agreed upon wages.

113. Defendant District 113 failed and refused to pay Plaintiff the owed wages.

114. Defendant District 113's actions were willful and not in good faith.

115. As a direct and proximate cause of Defendant District 113's unlawful conduct, Plaintiff has suffered and will continue to suffer a loss of income, loss of pension benefits and other damages.

## COUNT IV-FLSA RETALIATION

116.    Plaintiff repeats and re-alleges all previous paragraphs of this complaint.

117.    Plaintiff engaged in statutorily protected conduct under the FLSA.

118.    As a result, Defendant District 113 subjected Plaintiff to adverse employment actions in the form of a demotion and loss of future benefits, positions, and opportunities.

119.    Plaintiff has also suffered emotional distress and other compensatory damages.

## COUNT V-ILLINOIS WAGE PAYMENT AND COLLECTION ACT

120.    The Illinois Wage Payment and Collection Act ("IWPCA") requires employers to pay employees all wages earned by an employee pursuant to an agreement between the parties.

121.    Defendant District 113 violated the IWPCA by failing to pay the wages agreed upon.

122.    As a direct and proximate result of Defendant District 113's unlawful conduct, Plaintiff has suffered and will continue to suffer lost wages and other damages.

## COUNT VI-ILLINOIS WHISTLEBLOWER ACT 740 ILCS 174

123.    The Illinois Whistleblower Act prohibits retaliation for reporting misconduct, including public corruption or wrongdoing.

124.   Plaintiff reported misconduct by the outgoing HPHS Administration that included destroying and deleting school records, destroying evidence in a civil suit brought by a student, and allowing a child sex offender on campus in violation of State law and without the required supervision or oversight.

125.   As a result, Plaintiff suffered retaliation in that Defendants caused her to be demoted in 2018 and in 2019 and subjected her to a public "Notice of Non-Renewal."

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court:

A.   Declare that Defendants violated Plaintiff's constitutional and statutory rights as explained above;

B.   Enjoin Defendants from future violations;

C.   Award Plaintiff back pay and reinstate her to her position or award Plaintiff front pay in lieu of reinstatement;

D.   Award Plaintiff compensatory damages, including emotional distress and physical injury damages;

E.   Award Plaintiff punitive damages;

F.   Order Defendants to pay Plaintiff's reasonable attorney's fees, expenses, and costs; and

G.   Order all other appropriate relief as the interests of justice may require.

## **<u>JURY DEMAND</u>**

Plaintiff requests a jury trial.


Dated:  May 12, 2023

Respectfully submitted,

/s/ Noelle C. Brennan
One of the Attorneys for Plaintiff

Noelle C. Brennan
NOELLE BRENNAN & ASSOCIATES, LTD.
111 N. WABASH Street, Suite 800
Chicago, IL 60602
T: (312) 422-0001

20

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2023, I filed the foregoing **FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will provide notification of such filing to the e-mail addresses of all counsel of record.

Respectfully Submitted,

/s/Noelle C. Brennan
One of Plaintiff's Attorneys