# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into between Amy Burnetti ("Burnetti") and the Board of Education of Township High School District 113 (the "Board"). Burnetti and the Board are each referred to as a "Party" and they are collectively referred to as the "Parties" in this Agreement.

### BACKGROUND

1. Burnetti is presently employed by the Board as a teacher in contractual continued service.

2. Burnetti maintains that she was unlawfully demoted from the position of Assistant Principal effective in the 2018-2019 school year, and subsequently from the position of Department Chair effective in the 2020-2021 school year.

3. Burnetti filed a lawsuit against the Board and certain individual defendants in the United States District Court for the Northern District of Illinois, originally styled *Amy Burnetti v. Board of Education for Township High School District 113 and Deborah Finn, Elizabeth Garlovsky, Ben Martindale, Linda Yonke, and Debbie Hymen, all in their individual capacities*, Case No. 21-cv-2252 (the "Lawsuit"). In addition to the Board, the Lawsuit also named Deborah Finn, Elizabeth Garlovsky, Ben Martindale, Linda Yonke, and Debbie Hymen as defendants. The claims against Garlovsky, Martindale, Yonke, and Hymen were subsequently dismissed by the Court. The Board and Finn are collectively referred to as the "Defendants" in this Agreement.

4. Defendants deny all allegations of unlawful conduct, including the allegations set forth in the Lawsuit.

5. To avoid the potential expense, inconvenience, delay, and uncertainty of continued litigation, the Parties have agreed to settle and fully resolve all disputes or claims between them, including without limitation all disputes or claims that were or could have been raised in the Lawsuit or that otherwise relate to or arise from Burnetti's employment with the Board through the date on which Burnetti signs this Agreement.

### AGREEMENT

**1. Settlement Amount and Payment.**

**A.** The parties have agreed to settle this case for a total Settlement Payment in the gross amount of Five Hundred Thousand Dollars ($500,000), consisting of the following:

> **(1)** Compensatory Damages in the amount of Thirty-Five Thousand Four Hundred Eighty One Dollars ($35,481);
>
> **(2)** Attorneys' fees and costs in the amount of Two Hundred Thirty Thousand Dollars ($230,000).

3347102.11

    **(3)**    Back Pay in the total gross amount of One Hundred Seven Five Hundred Sixty-Three Dollars ($107,563) for alleged lost wages for school years 2020-2021 through 2023-2024, allocated as set forth in Column G of Exhibit A;

    **(4)**    Additional Lump Sum in the total gross amount of Thirty-Six Thousand Four Hundred Sixty-Nine Dollars ($36,469) for the 2024-2025 school year, to be paid during the 2024-25 school year;

    **(5)**    Additional Lump Sum in the total gross amount of Forty-Three Thousand Two Hundred Two Dollars ($43,202) for the 2025-2026 school year, to be paid during the 2025-26 school year;

    **(6)**    Additional Lump Sum in the total gross amount of Forty-Seven Thousand Two Hundred Eighty-Five Dollars ($47,285) for the 2026-2027 school year, to be paid during the 2026-27 school year.

**B.**    **Allocation of Back Pay and Additional Creditable Earnings.**

    **(1)**    Burnetti remains employed by the Board as a teacher. Burnetti has submitted her irrevocable election to retire at the conclusion of the 2026-2027 school year and intends to remain employed by the Board as a teacher until her retirement. It is the intention of the Parties for the Board to pay Back Pay to Burnetti to increase her Creditable Earnings for school years 2020-2021 through 2023-2024 to the same amount that Burnetti would have earned for those school years had she remained employed as an Assistant Principal. Additionally, the Parties intend for the Board to make future payments to Burnetti in each school year from 2024-2025 through 2026-2027 to increase her Creditable Earnings for those school years to the amount that she would have received if she had remained employed as an Assistant Principal through her retirement.

    **(2)**    For settlement purposes, the Parties agree that if Burnetti had not been demoted from the position of Assistant Principal, she would have received additional Creditable Earnings equal to the total gross amounts of additional Creditable Earnings set forth in § 1.A(3), 1.A(4), 1.A(5), and 1.A(6) above. The Parties agree that additional Creditable Earnings would have been allocated to each school year from 2020-2021 through 2023-2024 as set forth in Column G of the table included in Exhibit A. Those amounts will be paid to Burnetti as Back Pay under this Agreement. Burnetti will also receive additional payments to be paid in and classified as Creditable Earnings for school years 2024-25, 2025-26, and 2026-27 as set forth in Column H of Exhibit A.

    **(3)**    The Parties acknowledge that under the District's Retirement Incentive program, Burnetti is eligible for a total Retirement Incentive of Thirty-Six Thousand Five Hundred Dollars ($36,500), to be allocated over the four

years used to calculate Burnetti's average salary for TRS pension purposes, with any remaining balance paid to Burnetti as a post-retirement payment. Burnetti received a Retirement Incentive payment of One Thousand Six Hundred Thirty-Nine Dollars ($1,639) in June 2024 for the 2023-2024 school year, based upon her Creditable Earnings as a teacher for that term. The Parties agree that, had Burnetti been employed as an Assistant Principal for the 2023-2024 school year, she would have received a total Retirement Incentive payment for the 2023-2024 school year of Three Thousand One Hundred Forty Dollars ($3,140). Therefore, separate and apart from the Settlement Payment, the Board will pay Burnetti additional Retirement Incentive Back Pay in the gross amount of One Thousand Five Hundred One Dollars ($1,501), to increase Burnetti's total Creditable Earnings for the 2023-2024 school year to Two Hundred Two Thousand One Hundred Ninety-Three Dollars ($202,193). This additional Retirement Incentive Back Pay for the 2023-2024 school year will not increase Burnetti's total Retirement Incentive of $36,500, but rather will be deducted from the balance of the Retirement Incentive remaining payable to Burnetti for future school years and post-retirement.

**(4)** It is the intention of the Parties to structure this Agreement so as to avoid triggering employer penalties resulting from increases in Creditable Earnings of more than 6% per year during the years used to calculate Burnetti's TRS pension annuity. The Parties agree that Burnetti's total Creditable Earnings for each school year from 2024-2025 through 2026-2027 will not exceed 106% of her Creditable Earnings for the prior school year. If necessary, the projected Retirement Incentive payments for each year as reflected in Column I of Exhibit A will be reallocated in accordance with the formula customarily used by the District under its Retirement Incentive program so that Burnetti's total Creditable Earnings for each school year do not exceed 106% of her total Creditable Earnings for the prior school year. If there are any unpaid Retirement Incentive funds remaining after any reallocation, such funds shall be paid to Burnetti in accordance with the formula customarily used by the District.

**(5)** Promptly after the Effective Date, the Board will report this settlement to TRS and file with TRS an Employer's Report of Amendment to Earnings to reflect that Burnetti's creditable earnings for school years 2020-2021 through 2023-2024 increased by the amounts of back pay specified in Column G of Exhibit A for those school years, and to reflect the additional Retirement Incentive Back Pay for school year 2023-2024 provided for in Section 1.B(3).

**(6)** The Board will report the additional payments to Burnetti for school years 2024-25 through 2026-27 specified in Columns H and I of Exhibit A in accordance with TRS reporting requirements and procedures in effect at the time that those amounts are paid to Burnetti.

3347102.11

**(7)** As an active TRS member, Burnetti is required to contribute a percentage of her gross Creditable Earnings for each year for her TRS retirement annuity, automatic increases, death benefits, in the amount specified by TRS, currently 9%. Burnetti is also required to contribute to THIS insurance in the amount specified by TRS for each school year. These required employee contributions for prior school years, as determined by TRS, will be deducted from the total gross amount of all payments to Burnetti under this Settlement Agreement that are categorized as Creditable Earnings. The Board will be responsible for paying the employer share of all contributions to TRS and THIS and any interest on the employee or employer share of contributions for prior school years, and for timely remitting all employer and employee contributions and interest payments to TRS.

**(8)** If Burnetti's employment with the Board terminates for any reason before the payments provided for in Sections 1.A(5) or 1.A(6) are made to her, those payments will be issued to Burnetti as post-employment payments and will not count toward Burnetti's Creditable Earnings for purposes of her TRS pension, subject to paragraph 1.B(9) below.

**(9)** If Burnetti's employment with the Board is terminated for any illegal or retaliatory purpose, as determined by a court of competent jurisdiction, Burnetti shall be entitled to, in addition to all other available relief, the restoration of Creditable Earnings for purposes of her TRS pension, as provided for in Sections 1.A(5) or 1.A.(6). If, for any reason, such restoration is not available, Burnetti shall be entitled to the full value that she would have received, had the Creditable Earnings been adjusted as described in Sections 1.A(5) and 1.A(6).

**C. Payment Terms.** The Settlement Payment will be tendered as follows:

**(1)** Within fifteen days of the Effective Date (as defined in Section 10), the Board will issue a check payable to "Amy Burnetti," for Compensatory Damages as specified in § 1.A(1).

**(2)** Within fifteen days of the Effective Date (as defined in Section 10), the Board will issue a check payable to "Noelle Brennan and Associates" for the Attorney Fees and Costs in the amount specified in § 1.A(2).

**(3)** On the next regularly scheduled payroll date at least 15 days after the Effective Date (as defined in Section 10), the Board will issue payment to Burnetti via direct payroll deposit to the bank account that she has designated for direct deposit of her wages from the District in the total gross amount of Back Pay specified in § 1.A(3), the Retirement Incentive Back Pay specified in 1.B(3), subject to withholding and deductions as specified in § 1.B(7) and § 1.E.

3347102.11

**(4)** No sooner than January 1, 2025 and no later than June 1, 2025, the Board will issue payment to Burnetti via direct payroll deposit to the bank account that she has designated for direct deposit of her wages from the District in the total gross amount specified in paragraph 1.A(4), subject to withholding and deductions as specified in paragraph 1.B(7) and 1.E.

**(5)** No sooner than January 1, 2026 and no later than June 1, 2026, the Board will issue payment to Burnetti via direct payroll deposit to the bank account that she has designated for direct deposit of her wages from the District in the total gross amount specified in § 1.A(5), subject to withholding and deductions as specified in § 1.B(7) and § 1.E.

**(6)** No sooner than January 1, 2027 and no later than June 1, 2027, the Board will issue payment to Burnetti via direct payroll deposit to the bank account that she has designated for direct deposit of her wages from the District in the total gross amount specified in § 1.A(6), subject to withholding and deductions as specified in § 1.B(7) and § 1.E.

**D.** The Board represents that it is solely responsible for issuing the payments to Burnetti required by this Agreement. Burnetti shall have no recourse to seek any payment under this Agreement from the Board's insurer. The Board will seek payment from its insurer for the full amount of the Settlement Payment. Once that amount has been paid to the Board, the Board acknowledges that it will have no further recourse against the insurer for payments to be issued to Plaintiff under this Agreement and will hold the insurer harmless from any claim by Burnetti or any third party arising from the Board's failure to make any payment to Plaintiff as required by this Agreement.

**E.** The portions of the Settlement Payment described in Sections 1.A(3), 1.A(4), 1.A(5), and 1.A(6), and the Retirement Incentive Back Pay described in Section 1.B(3), will be reported as wages paid to Burnetti on IRS Form W-2, and will be subject to tax withholding as required by applicable law. The Board will promptly remit taxes withheld from the Settlement Payment to relevant taxing authorities as required by law. The portions of the Settlement Payment described in Section 1.A(1) and 1.A(2) will be reported on IRS Forms 1099. Payments to Burnetti under this Agreement will also be subject to garnishment or deductions required by any garnishment or wage deduction order issued by a court of competent jurisdiction, to the extent required by law.

**F.** The Parties represent that they have submitted this Agreement for TRS review and approval and TRS has confirmed that the Agreement will operate as the Parties intend. TRS pension benefits, however, are determined solely by TRS. Burnetti is responsible for consulting with TRS and her legal and financial advisers to understand the tax and pension effects of this Agreement. If, however, TRS fails to adjust Burnetti's Creditable Earnings as described herein, the Parties shall work together to request that TRS make the described adjustments.

**G.** Neither the Board nor its attorneys or insurers make any representation to Burnetti regarding the tax consequences of any payments made under this Agreement. Burnetti will be

solely responsible for paying any federal, state, or local taxes that she may owe as a result of the Settlement Payment, other than taxes withheld by the Board as provided in Section 1.E.

2. **Releases.**

    A. For purposes of this Agreement, the "Released Parties" means the Board and all of its current and former board members, administrators, supervisors, employees, agents, predecessors, successors, benefit plans, insurers, and assigns. "Released Parties" specifically includes Deborah Finn, Elizabeth Garlovsky, Ben Martindale, Linda Yonke, and Debbie Hymen.

    B. In exchange for the consideration provided for in this Agreement, Burnetti, on behalf of her and her heirs, legatees, personal representatives and assigns, releases and discharges the Released Parties from any and all claims that are or could have been asserted in the Lawsuit, and all other claims or causes of action, whether known or unknown, that Burnetti has, had, or may have against any of the Released Parties, accruing on or before the date that Burnetti signs this Agreement, arising from or relating in any way to Burnetti's employment with the Board or any compensation, benefits, or terms or conditions of employment. This release specifically includes, but is in no way limited to, all claims under the Constitutions of the United States of America or the State of Illinois; Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.*; the Civil Rights Acts of 1866 and 1871, 42 U.S.C. § 1981; 42 U.S.C. § 1983; the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*; the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the Equal Pay Act, 29 U.S.C. § 29 U.S.C. § 206(d); the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.*; the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; the Employee Retirement Income Security Act of 1973, 29 U.S.C. §§ 1001 *et seq.*; the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 *et seq.*; the Illinois Human Rights Act, 765 ILCS 5/1-101 *et seq.*; the Illinois School Code, 105 ILCS 5/1-1 *et seq.*; the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, the Illinois Minimum Wage Law, 820 ILCS 105/1; the Illinois Whistleblower Act, 740 ILCS 174/1; all claims for breach of contract; all claims for wrongful or retaliatory discharge or demotion; all claims sounding in tort; and all other claims arising under any statute, regulation, ordinance, or the common law.

    C. Burnetti further releases all other claims or causes of action, known or unknown, whether related to her employment or not, that she has, had, or may have had under any federal, state, or local statute, regulation, ordinance, or the common law against any of the Released Parties, arising on or before the date that Burnetti signs this Agreement.

    D. The releases in this Section 2 do not apply to claims accruing after the date on which Burnetti signs this Agreement.

    E. Burnetti further waives any right to recovery of attorneys' fees, attorneys' liens, costs, and any other remedy that could have been sought in connection with any of the claims released in this Section 2.

3. **No Assignment of Released Claims.** Burnetti represents and warrants that she has not assigned any claim released in this Agreement to any person or entity, and that there are no outstanding liens as to any such claims. Burnetti further represents that no Medicaid or Medicare

3347102.11

payments have been made to or on behalf of Burnetti and that no liens, claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from or related to any of the claims released in this Agreement.

4. **Covenant Not to Sue.** Burnetti will not file or join as a plaintiff in any lawsuit based upon any claim released in this Agreement. Nothing in this Agreement prohibits any party from filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission or state fair employment practices agency, or from participating in any investigation of such a charge. However, Burnetti waives any right to receive any monetary or other benefit as a result of any charge, claim, lawsuit, or administrative proceeding based upon any claim released in this Agreement.

5. **Knowing and Voluntary Waiver of Age Claims.** Burnetti acknowledges that:

    A. She has been given a period of at least 21 days after being presented with this Agreement in which to consider whether to sign it, and has an adequate opportunity to review this Agreement and obtain any legal advice necessary to fully understand its terms;

    B. The consideration she will receive under this Agreement is in addition to anything of value to which she is otherwise entitled to receive from Defendants under applicable law;

    C. She has read and understands this Agreement;

    D. She is waiving any and all claims against Released Parties under the Age Discrimination in Employment Act arising up to the date on which she signs this Agreement; and

    E. She has been advised to consult with her attorney before executing this Agreement and has done so.

6. **Revocation.** Burnetti may revoke this Agreement within seven calendar days after signing it. The revocation will be effective only if written notice of the revocation is received by Defendants' counsel of record, William R. Pokorny, Franczek, P.C., 300 South Wacker Drive, Suite 3400, Chicago, Illinois 60606, before the eighth calendar day after Burnetti signs this Agreement. The Board's obligations under this Agreement will not take effect unless the time for Burnetti to revoke this Agreement has expired and Burnetti has not revoked this Agreement.

7. **No Admission of Wrongdoing.** Nothing in this Agreement constitutes an admission of wrongdoing by the Defendants. Defendants deny the allegations of the Lawsuit and deny wrongdoing of any kind.

8. **Confidentiality.** Burnetti will keep the fact and terms of this Agreement confidential and will not discuss or disclose these matters with or to anyone other than her immediate family members, her attorneys and her tax or financial advisors, except as required by law. The Parties acknowledge that Board may be required to disclose this Agreement in response to a request under the Illinois Freedom of Information Act. If asked about this Agreement or the Lawsuit, the Board and Burnetti may reply that the "matter has been resolved by mutual agreement," or words to that effect, without further comment.

3347102.11

**9. Approval by the Board of Education.** This Agreement will be valid only if it is formally approved by a vote of the Board in accordance with applicable law.

**10. Court Approval.** Promptly after execution of this Agreement by Burnetti and on behalf of the Board and expiration of the revocation period set forth in Section 6 above, the Board and Burnetti, through their respective counsel, will file a joint motion for approval of the Settlement Agreement with the Court, in substantially the form attached hereto as Exhibit B, asking the Court to enter an order approving the Settlement and dismissing the Lawsuit in substantially the form attached hereto as Exhibit C. The Parties and their respective counsel will cooperate in good faith to obtain approval of the Agreement. The Effective Date of this Agreement will be the date that the Court approves the Agreement. If for any reason the Court declines to approve the Agreement in its current form, the Parties will negotiate in good faith to modify the Agreement, if possible, to gain Court approval while implementing the intentions of the Parties as reflected in the Agreement and without increasing or decreasing the total amount of the Settlement Payment.

**11. Entire Agreement.** This Agreement sets forth the entire agreement of the Parties and supersedes all prior agreements and understandings between the Parties relating to the subject matters addressed in this Agreement. The Parties acknowledge that the consideration for this Agreement is described in this instrument and that no other promise of any kind has been made to them by any person or entity to cause them to sign this Agreement.

**12. Choice of Law.** This Agreement is to be construed in accordance with the laws of the State of Illinois, without regard to conflict of law principles.

**13. Modification of this Agreement.** This Agreement may not be amended or modified except in a writing signed by the Party against whom the amendment or modification is to be enforced.

**14. Mutual Authorship.** This Agreement is the product of mutual negotiation between the Parties. All Parties and their attorneys have had the opportunity to review and revise, or request revisions of, this Agreement. Therefore, the rule of construction that any ambiguity or uncertainty in a writing shall be interpreted against the party drafting the writing will not apply to any action on this Agreement.

**15. Execution in Counterparts.** This Agreement may be signed in counterparts, which together will form the original.

**16. Severability.** Nothing in this Agreement is to be construed as waiving rights that cannot be waived under applicable law, or as barring either Party from providing information or truthful testimony when required to do so under applicable law. The releases provided for in this Agreement are to be construed broadly to apply to any and all claims that may be released by contract under applicable law, but do not apply to any claim that cannot be released by contract under applicable law. Should any portion of this Agreement be ruled unenforceable by a court of competent jurisdiction, or should a court of competent jurisdiction rule the releases and covenant not to sue set forth in this Agreement unenforceable as to any claim later asserted by Burnetti, the remainder of this Agreement and the releases and covenant not to sue contained herein will remain in full force and effect as to any and all other claims.

**17.     Burnetti's Acknowledgement of Knowing and Voluntary Agreement.** Burnetti acknowledges that she has read this Agreement. Burnetti understands that this Agreement releases the Released Parties from all of the claims described in Section 2, including but not limited to all of the claims that were or could have been asserted in the Lawsuit. By signing below, Burnetti voluntarily accepts the terms stated in this Agreement. She acknowledges that her attorney has reviewed this Agreement, that she has had an adequate opportunity to discuss it with her attorney, and that its terms were determined by negotiation between the Parties and their respective attorneys.

**Accepted and Agreed To By:**

| AMY BURNETTI | BOARD OF EDUCATION, TOWNSHIP HIGH SCHOOL DISTRICT NO. 113 |
|---|---|
| _/s/ Amy Burnetti_ | By: __Chala Holland__ _/s/ Chala Holland_ |
| Date: 11/22/24 | Title: __Superintendent__ |
| | Date: __11/25/2024__ |

3347102.11

# EXHIBIT A

| A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|
| School year | Creditable Earnings as Teacher Before Retirement Incentive | Retirement Incentive as Teacher | Total Creditable Earnings as Teacher | % Increase | Creditable Earnings as AP Before Retirement Incentive | Back Pay for Prior School Years | Additional Lump Sumsw to be Paid in 2024-25 to 2026-27 | Retirement Incentive as AP | Total Creditable Earnings as AP | % Increase |
| 2020-2021 | $154,223 | | $154,223 | | $179,051 | $24,828 | | | $179,051 | |
| 2021-2022 | $159,403 | | $159,403 | 3.36% | $184,321 | $24,918 | | | $184,321 | 2.94% |
| 2022-2023 | $161,953 | | $161,953 | 1.60% | $190,748 | $28,795 | | | $190,748 | 3.49% |
| 2023-2024 | $170,031 | $1,639 | $171,670 | 6.00% | $199,053 | $30,523 | | $3,140** | $202,193 | 6.00% |
| 2024-2025* | $172,352 | $9,618 | $181,970 | 6.00% | $208,821 | | $36,469 | $5,503 | $214,324 | 6.00% |
| 2025-2026* | $177,906 | $14,983 | $192,888 | 6.00% | $221,108 | | $43,202 | $6,076 | $227,184 | 6.00% |
| 2026-2027* | $183,162 | $10,260 | $193,424 | 0.28% | $230,447 | | $47,285 | $10,368 | $240,815 | 6.00% |
| Post Retirement* | | $0 | | | | | | $11,413 | | |
| Totals | | $36,500 | | | | $107,563 | $126,956 | $36,500 | | |

\* Projected

\*\* Includes the amount of $1,639 already paid to Burnetti in June 2024, plus the additional Retirement Incentive Back Pay of $1,501 for 2023-2024, as specified in § 1.B(3).

3347102.11

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMY BURNETTI,<br>　　　　　　　　　Plaintiff,<br>v.<br>BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113 and DEBORAH FINN,<br>　　　　　　　　　Defendants. | Case No. 21-cv-2252<br><br>Hon. John J. Tharp, Judge Presiding<br><br>Presented to:<br>Hon. Maria Valdez, Magistrate Judge |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**

　　　　Plaintiff Amy Burnetti and Defendants the Board of Education of Township High School District 113 and Deobrah Finn jointly move the Court to approve the Parties' settlement in this matter. In support of their Motion, the Parties state the following:

　　　　1.　　In her Complaint, Plaintiff asserts claims against the Defendants under various statutes and causes of action. Among other things, Plaintiff alleges that Defendants violated the Fair Labor Standards Act (FLSA) and Wage Payment and Collection Act (IWPCA) by failing to pay Plaintiff all wages due to her under the FLSA and IWPCA.

　　　　2.　　 Defendants dispute Plaintiff's claims and Plaintiff's calculations of the amounts allegedly owed.

　　　　3.　　Through their counsel, Plaintiff and Defendants engaged in extensive settlement negotiations, including exchanges of multiple rounds of written correspondence, several settlement conferences before the Court, and multiple telephone conferences between counsel.

3347102.11

4.       Prior to their negotiations, the parties engaged in extensive written and oral discovery, exchanging thousands of pages of documentation and completing depositions of multiple party and non-party witnesses.

5.       There are *bona fide* disputes between Plaintiff and Defendants regarding key issues, including whether Plaintiff is owed any additional wages under the FLSA or IWPCA and whether any alleged violation of the FLSA was "willful," among other things.

6.       As a result of negotiations between Defendants and Plaintiff, the parties have reached a settlement of Plaintiff's claims against Defendants. The terms of their agreement are memorialized in a Confidential Settlement Agreement and Release (referred to herein as the "Settlement Agreement"), a copy of which is attached hereto as Exhibit A.

7.       The Settlement Agreement provides for, among other things, payment of back wages, compensatory damages, attorneys' fees, and court costs to Plaintiff and Plaintiff's counsel. Plaintiff and Plaintiff's counsel believe that the amounts to be paid represent a reasonable compromise of Plaintiff's claims based upon the parties' respective assessments of the strengths and weaknesses of Plaintiff's claims and Defendant's defenses and the inherent risks of litigation.

8.       When an employee brings a private action against his employer or former employer under the FLSA or IWPCA, a wholly private settlement between the parties is generally not enforceable. Consequently, in such a situation the parties present to the court a proposed settlement, so the court may enter a stipulated judgment dismissing the case after examining the settlement to ensure that it is a fair and reasonable resolution of a *bona fide* dispute. *See Lynn's Food Stores v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).

9.     The Parties agree and stipulate that the Settlement Agreement is a fair and reasonable resolution of *bona fide* disputes under the FLSA and IWPCA and the other claims asserted in the Amended Complaint. Accordingly, the Parties ask the Court to enter an order approving the Settlement Agreement.

10.     The Parties further request that the Court dismiss the Lawsuit without prejudice and retain jurisdiction over this matter for sixty days after its approval of the Settlement Agreement for the sole purpose of enforcing the Parties' Settlement Agreement. If no party files a motion to enforce the Settlement Agreement or related motion within that period, the Parties request that the Court dismiss this case with prejudice, with the parties to bear costs and attorneys' fees as set forth in the Settlement Agreement.

WHEREFORE, the Parties respectfully ask the Court to approve the Settlement Agreement between Plaintiffs and Defendants. Upon approval of the Settlement Agreement, the Parties ask the Court to dismiss this case without prejudice and to order that the dismissal will convert to a dismissal with prejudice 60 days after the date of the dismissal order, unless any Party files a motion to reinstate the case for the sole purpose of enforcing the Settlement Agreement.

3347102.11

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| AMY BURNETTI,<br><br>                              Plaintiff,<br>     v.<br>BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT 113 and DEBORAH FINN,<br>                              Defendants. | Case No. 21-cv-2252<br><br>Hon. John J. Tharp, Judge Presiding<br><br>Presented to:<br>Hon. Maria Valdez, Magistrate Judge |

## **[PROPOSED] ORDER**

The Parties' Joint Motion for Approval of Settlement [##] is granted. The Court finds that the Confidential Settlement Agreement and Release ("Settlement Agreement") between Plaintiff and Defendants is a fair and reasonable compromise of a *bona fide* dispute between the parties of the claims asserted in the Amended Complaint including but not limited to Plaintiff's claims under the Fair Labor Standards Act and Illinois Wage Payment and Collection Act. The parties are directed to comply with the provisions of the Settlement Agreement and will bear costs and attorneys' fees as set forth in the Settlement Agreement. This case is dismissed without prejudice for a period of 60 days, during which time any Party may seek leave to reinstate the case for the sole purpose of enforcing the Settlement Agreement. If no party has filed a motion to reinstate the case within 60 days of the date of this Order, this case will be dismissed with prejudice without further order of the Court.

3347102.11